UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------x

 RAVEENDRAN NARAYANAN,

                    Plaintiff,              **MEMORANDUM & ORDER**
                                            22-CV-5661 (EK)(LB)

          -against-

 MERRICK B. GARLAND, LETITIA JAMES,
 KILOLO KIJAKAZI, RUDOLPH GIULIANI,
 GEORGIA M. PESTANA, et al.

               Defendants.

------------------------------------x
ERIC KOMITEE, United States District Judge:

          Plaintiff Raveendran Narayanan, proceeding *pro se*,

brought this action against seven defendants: Merrick Garland,

the U.S. Attorney General; Kilolo Kijakazi, Acting Commissioner

of the U.S. Social Security Administration; Letitia James, the

New York State Attorney General; Rudolph Giuliani, a former

mayor of New York City; Georgia Pestana, a former Corporation

Counsel of New York City; FJC Security, Inc., a private security

firm; and Dr. David Berman, M.D., an ophthalmologist.

          In a complaint that includes more than 140 numbered

paragraphs, Narayanan cites a litany of laws and constitutional

rights that the defendants allegedly violated, including

42 U.S.C. § 1983; the Alien Tort Claims Act; and the First and

Fourteenth Amendments.  He also alleges tort claims of medical

malpractice and negligence relating to the treatment of his left

retina by Dr. Berman.  His allegations arise primarily from two
unconnected matters: first, an assault that he suffered in a New
York City-run homeless shelter in 1998 and related events
(including the treatment by Dr. Berman); and second, the Social
Security Administration's denial of his March 2018 application
for supplemental security income ("SSI").  He seeks judicial
review of the denial of his SSI application and money damages
totaling approximately $4.4 million.

Before the Court are motions to dismiss by Attorney
General Garland and Acting Commissioner Kijakazi (together, the
"Federal Defendants"), Attorney General James, and Ms. Pestana;
and a motion for summary judgment by Narayanan.  The Federal
Defendants move to (1) dismiss any claims seeking money damages
under Rule 12(b)(1) of the Federal Rules of Civil Procedure for
lack of subject matter jurisdiction (specifically, on the ground
of sovereign immunity); (2) dismiss the claim seeking review of
the denial of his SSI application against Attorney General
Garland under Rule 12(b)(6) for failure to state a claim; and
(3) sever the claim for review of the SSI denial against the
Commissioner from any remaining claims under Rule 20(a)(2).
Attorney General James seeks dismissal pursuant to Rule 12(b)(1)
on the basis of Eleventh Amendment immunity, Rule 12(b)(5) for
insufficient service of process, and Rule 12(b)(6).  Pestana
moves for dismissal under Rule 12(b)(5) or, in the alternative,

Rule 12(b)(6).  Finally, Narayanan seeks summary judgment
pursuant to Rule 56.

      For the reasons set forth below, the defendants'
motions to dismiss are granted pursuant to Rule 12(b)(6) for
failure to state a claim, and Narayanan's motion for summary
judgment is denied.

## I.   Background

      The following factual allegations are taken from the
complaint and the documents attached thereto.  While Narayanan
has moved for summary judgment, no discovery has occurred, and
Narayanan has not submitted a statement setting forth the
material facts as to which he contends there is no dispute, as
required by Rule 56.1 of this district's Local Civil Rules.
Thus, for purposes of resolving the pending motions, the record
is limited to the complaint and its attachments.

**A.   1998 Assault and Related Allegations**

      In September of 1998, Narayanan was assaulted in the
middle of the night at a men's homeless shelter in Brooklyn, New
York.  Compl. ¶¶ 30-32; *see also Narayanan v. City of New York*,
801 N.Y.S.2d 45, 45 (App. Div. 2d Dep't 2005); Letter from
Detective Jeffrey Wright dated Sept. 13, 1998 ("Wright Letter"),

Compl. 71.[1]  The City of New York operated the shelter at the
time and retained FJC Security, Inc. to provide security
services.  Compl. ¶ 30; *Narayanan*, 801 N.Y.S.2d at 45.
According to Narayanan, no security guards protected the shelter
between midnight and 8:00 a.m.  Compl. ¶ 30.  At approximately
1:00 a.m. on September 3, a group of individuals unknown to
Narayanan — who "were aware" of the lack of security at that
hour — "assaulted [and] robbed" him.  *Id.* at 10, ¶ 30 (referring
to "[s]ix assailants"); *but see Narayanan*, 801 N.Y.S.2d at 45
(stating that he was allegedly assaulted by "three unidentified
men").  He sustained injuries including a fractured nose, and
was hospitalized for nine days thereafter.  Compl. ¶¶ 89-91.
Further, several of his items were stolen, including a Samsonite
briefcase, a watch, certain documents, and $800 in cash.  *Id.*
¶ 32; Wright Letter.

        Narayanan alleges that this assault was part of a
"[h]igh level" "international conspiracy" and "coordinated
economic attack" against him.  Compl. 10, ¶ 33.  He asserts that
the theft of his personal items occurred not during the assault
but in its aftermath as part of a "coverup operation" — in

---

[1] Citations to the complaint refer to its numbered paragraphs when so
designated; otherwise, such citations refer to ECF pagination.

    The Second Department's order in *Narayanan v. City of New York*,
801 N.Y.S.2d 45, 45 (App. Div. 2d Dep't 2005), is also included in the
complaint at pages 78 through 81.

furtherance of which the "Former NYC Mayor" (Rudolph Giuliani) and "the NYC Police commissioner" accessed the shelter and took his belongings.  Compl. ¶ 32.  But a letter written by Detective Jeffrey Wright of the New York City Police Department a few days after the assault indicated that Narayanan's belongings were stolen by his assailants.  *See* Wright Letter.

Throughout the complaint, Narayanan identifies several other components of the alleged wide-ranging conspiracy.  For one, he alleges that from 2003 to 2004, Giuliani, FJC Security, the City of New York, and others engaged in efforts to have him deported in an attempt to avoid paying him an alleged $1 million personal injury settlement reached in connection with the 1998 assault.  *See, e.g.*, Compl. ¶¶ 32, 33, 38.  Further, he alleges that his green card, which he had received in 2000, was "terminated" in September of 2003 "due to [the] [h]igh level conspiracy."  *Id.* at 10.  Documents appended to the complaint, however, reflect that Narayanan filed an "Application to Adjust to Permanent Resident Status" in February 2000, which was denied in July 2002 because he did not provide certain required documents, and that his work authorization expired in 2003.  *Id.* at 75-77.

Finally, he asserts that in response to an order from the Kings County Supreme Court, American International Group ("AIG") sent him to Dr. Berman, a retinal specialist, for eye

tests, and that Dr. Berman "used corticosteroid containing eye drops to damage [his] vision." *Id.* ¶¶ 86-87, 98-99, 103. Narayanan suggests that "[AIG] and its trail [*sic*] Lawyers" coordinated this "attack to destroy [his] eye vision." *Id.* ¶¶ 124, 127.

**B.    Social Security Disability Benefits Applications**

Narayanan also raises allegations relating to his March 2018 application to the Social Security Administration for supplemental security income ("SSI"). In September of 2019, an administrative law judge found Narayanan ineligible for SSI because he did not meet the established citizenship and eligibility requirements and did not meet any of the specified exceptions to those requirements. *See id.* at 32-41, ¶ 48. The agency's Appeals Council denied review of the ALJ's decision in February of 2020. *See id.* at 24-27. Narayanan subsequently filed a separate claim for SSI that the agency granted; he has been receiving benefits in connection with that application since October 29, 2021. *See id.* at 11, ¶ 57.[2]

**C.    Procedural History**

Narayanan commenced this action in the U.S. District Court for the Southern District of New York in February of 2022.

---

[2] Narayanan offers no explanation as to how he cured the deficiencies present in his original application, and the current record provides none.

While he styled the complaint as a petition for a writ of habeas corpus, Judge Koetl determined that the submission was a civil complaint, rather than a habeas petition. *See* ECF No. 4. The Federal Defendants, Attorney General James, and Ms. Pestana filed motions to dismiss in the Southern District.[3] The Federal Defendants also moved, in the alternative, to transfer the case to this district on the ground that Narayanan seeks judicial review of the Social Security Administration's decision to deny his March 2018 SSI application. Pursuant to 42 U.S.C. § 405(g), an action seeking such review "shall be brought in the district court . . . for the judicial district in which the plaintiff resides." Narayanan is a resident of Queens, which is located in this district. *See* 28 U.S.C. § 112(c).

In response to these motions, Narayanan filed what he styled as a motion for summary judgment, rather than an opposition brief. As noted above, however, he did not submit a Local Rule 56.1 statement. Nor did he specifically "identify[] each claim or defense . . . on which summary judgment is sought." Fed. R. Civ. P. 56(a). Nevertheless, Judge Koetl construed that filing as "both a new motion [for summary judgment] and a response to the defendants' motions." Order dated July 21, 2022, ECF No. 52.

---

[3] Dr. Berman and Mr. Giuliani have not yet appeared. FJC Security filed an answer to the complaint. *See* ECF No. 72.

On September 15, 2022, Judge Koetl granted the Federal Defendants' motion to transfer venue; he thus reserved judgment on all other pending motions to permit their resolution by this Court. *See* Order Granting Mot. to Transfer Venue, ECF No. 64.

## II.  Discussion

### A.  Federal Defendants' Motion to Dismiss

For the reasons set forth below, Narayanan's claims against the Federal Defendants must be dismissed under Rule 12(b)(6) for failure to state a claim.

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).[4] The plaintiff bears the burden of establishing subject matter jurisdiction. *Id.*

To overcome a motion to dismiss under Rule 12(b)(6), a complaint must plead facts sufficient "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  The Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *See Lundy v. Cath. Health Sys. of Long Island Inc.*, 711 F.3d 106, 113 (2d

---

[4] Unless otherwise noted, when quoting judicial decisions this order accepts all alterations and omits citations and internal quotation marks.

Cir. 2013).  Moreover, when a plaintiff is proceeding *pro se*, courts "construe [the] complaint liberally and interpret it to raise the strongest arguments that it suggests."  *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010).

   1.  Claim for Money Damages

       The complaint indicates that Attorney General Garland and Acting Commissioner Kijakazi (the "Commissioner") were included in this action, along with Attorney General James, in connection with Narayanan's request for review of the Commissioner's decision to deny his March 2018 SSI application. Compl. ¶¶ 41-44.  But the complaint's statement of relief also seeks $427,400 jointly from Attorney General Garland, the Commissioner, and Attorney General James (who has no apparent or alleged involvement in the affairs of the Social Security Administration) for retirement and disability Social Security benefits for "previous years pending."  *Id.* at 11, ¶ 140.  To the extent that Narayanan seeks money damages from the Federal Defendants, this claim fails.

       If Narayanan seeks the benefits that he would have received had the Commissioner granted his March 2018 SSI application, he may only seek such relief through judicial review of the decision to deny that application, *see* 42 U.S.C. § 405(g); his request for such review is addressed in Section II.A.2, *infra*.  But if Narayanan also seeks benefits for which

he did not apply or receive a final decision, this Court lacks jurisdiction to entertain that claim. *See Weinberger v. Salfi*, 422 U.S. 749, 764-65 (1975) (explaining that the requirement that a claimant exhaust administrative remedies and obtain a final decision of the Commissioner is "central to the requisite grant of subject-matter jurisdiction").

Moreover, to the extent that Narayanan seeks money damages for the denial of his March 2018 SSI application, sovereign immunity bars that claim. "[T]he United States has not waived its sovereign immunity for claims by a Social Security claimant seeking monetary relief in addition to benefits awards." *Donnelly v. Barnhart*, 80 F. App'x 701, 702 (2d Cir. 2003). While a claim for money damages under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), is not barred by sovereign immunity, Narayanan does not specifically allege that Attorney General Garland violated any of his constitutional rights, much less that such alleged conduct would fit within the very small universe of viable *Bivens* actions. *See, e.g.*, *Egbert v. Boule*, 142 S. Ct. 1793, 1803 (2022) ("recognizing a cause of action under *Bivens* is a disfavored judicial activity" and "will be [improper] in most every case").

Accordingly, any claim for money damages against the Federal Defendants must be dismissed under Rule 12(b)(6). *See,*

*e.g.*, *Liffiton v. Keuker*, 850 F.2d 73, 77 (2d Cir. 1988)
(affirming district court's dismissal under Rule 12(b)(6) of
claims against a federal agency on the basis of sovereign
immunity).

    2.    Claim for Review of the Commissioner's Final
           Decision

        Narayanan's request for review of the Commissioner's
final decision on his March 2018 SSI application must be
dismissed with respect to Attorney General Garland.  The
Commissioner is the only proper defendant to this claim; thus,
Narayanan cannot also assert it against Attorney General
Garland.  *See* 20 C.F.R. § 422.210(d) ("[T]he person holding the
Office of the Commissioner shall, in his official capacity, be
the proper defendant.").

        This claim must also be dismissed because it is
untimely.  While the Federal Defendants argue merely for
severance of this claim from any remaining claims against other
defendants and do not raise a limitations defense, the Court
nonetheless may dismiss a claim as untimely where the
untimeliness is clear on the face of the complaint.  *See, e.g.*,
*Jones v. Bock*, 549 U.S. 199, 215 (2007) (explaining that "[a]
complaint is subject to dismissal for failure to state a claim
if the allegations, taken as true, . . . show that relief is
barred by the applicable statute of limitations," which "does

not make the statute of limitations any less an affirmative
defense").

By statute, an appeal to a district court from a final
decision of the Social Security Administration must be made
"within sixty days after the mailing . . . of notice of such
decision or within such further time as the Commissioner of
Social Security may allow."  42 U.S.C. § 405(g).  "The
Commissioner's regulations set forth that the sixty-day period
begins on the date the Appeals Council notice is received, and,
absent a reasonable showing to the contrary, a plaintiff is
presumed to have received the notice five days after the date of
the notice."  *Montgomery v. Comm'r of Soc. Sec.*, 403 F. Supp. 3d
331, 337 (S.D.N.Y. 2018).  On February 5, 2020, the Appeals
Council denied review of the ALJ's decision finding Narayanan
ineligible for SSI, rendering that decision final.  *See* Compl.
24-26.  Narayanan is presumed to have received the agency's
notice by February 10, 2020, *see Montgomery*, 403 F. Supp. 3d at
337; therefore, the sixty-day deadline to seek judicial review
expired on April 10, 2020.

While equitable tolling may extend the limitations
period, "a plaintiff must show that [he] has been pursuing his
rights diligently and that some extraordinary circumstance stood
in [his] way."  *Id.*  Narayanan did not commence this action
until approximately two years after the sixty-day appeal window

lapsed, and he has not alleged — let alone shown — that he made
diligent efforts to pursue his rights (or that some obstacle
prevented him from doing so).  Accordingly, Narayanan has not
established a basis for equitable tolling; this claim therefore
must also be dismissed as untimely.  Given this conclusion, the
motion to sever pursuant to Rule 20(a)(2) is denied as moot.

**B.   The New York Attorney General's Motion to Dismiss**

Attorney General James argues for dismissal of the
Section 1983 claim against her pursuant to Rules 12(b)(1),
12(b)(5), and 12(b)(6).  First, she contends that to the extent
that Narayanan asserts a Section 1983 claim against her in her
official capacity, it is barred by Eleventh Amendment immunity.
Second, she contends that Narayanan failed to complete service
according to the requirements of New York law.  Finally, she
contends that Narayanan has not alleged that she was involved in
the decision to deny his March 2018 SSI application and
therefore cannot pursue a Section 1983 claim against her based
on that decision.

1.   Improper Service

"Before a federal court may exercise personal
jurisdiction over a defendant, the procedural requirement of
service of summons must be satisfied."  *Omni Capital Int'l, Ltd.
v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987).  Rule 4(e)(1) of
the Federal Rules of Civil Procedure permits service of process

by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made."  Pursuant to New York law, personal service upon a state officer sued solely in an official capacity may be made by mailing the summons by certified mail to such officer, *and* "by personal service upon the state" "made by delivering the summons to an assistant attorney-general at an office of the attorney-general or to the attorney-general within the state."  N.Y. C.P.L.R. § 307(1)-(2).

According to its records, the Office of the Attorney General did not receive personal delivery as required by Section 307(1).  *See* Decl. of Seth Farber dated June 10, 2022, ECF No. 38.  And though the Attorney General is obviously aware of this case, actual notice is not sufficient to cure improper service. *See Bankers Trust Co. of Cal., N.A. v. Tsoukas*, 756 N.Y.S.2d 92, 94 (App. Div. 2d Dep't 2003) ("Even if a defendant eventually acquires actual notice of the lawsuit, actual notice alone will not sustain the service . . . when there has not been compliance with the prescribed conditions of service.").  Narayanan has therefore failed to effect proper service on Attorney General James.

Rule 4(m) provides that "[i]f a defendant is not served within 90 days after the complaint is filed, the court .

14

. . must dismiss the action without prejudice against that defendant or order that service be made within a specified time."[5]  While the Court has discretion to grant Narayanan leave to effect proper service, such service would be futile because Narayanan's claims against Attorney General James fail on the merits, as described below.  *See, e.g.*, *Radiancy, Inc. v. Viatek Consumer Prod. Grp., Inc.*, 138 F. Supp. 3d 303, 315 (S.D.N.Y. 2014) (declining to grant leave to effect proper service where "such service would be futile" because the claim would fail on the merits); *Maranga v. Abdulmutallab*, 903 F. Supp. 2d 270, 272-73 (S.D.N.Y. 2012) (same).

    2.   Section 1983 Claim

        To the extent that Narayanan's Section 1983 claim is asserted against Attorney General James in her official capacity, the claim is barred by sovereign immunity.  Money damages cannot be recovered from state officers sued in their official capacities.  *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) ("[A] suit against a state official in his or her official capacity is not a suit against an official but rather is a suit against the official's office."); *see also Goonewardena v. New York*, 475 F. Supp. 2d 310, 329 (S.D.N.Y.

---

[5] A defendant may assert an improper-service defense in a pre-answer motion.  *See, e.g.*, *Sun v. Mashantucket Pequot Gaming Enter.*, 309 F.R.D. 157, 165 (D. Conn. 2015) (defendants who raised improper-service defense in a motion to dismiss — their first responsive pleading — "did not waive the right to assert this defense").

2007) ("[S]overeign immunity also extends to bar claims for monetary damages brought against state officers sued under section 1983 in their official capacities.").

Moreover, to the extent that Narayanan asserts a Section 1983 claim against Attorney General James in her individual capacity, that claim fails because he alleges no personal involvement in any alleged violation of his constitutional rights. *See Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 135 (2d Cir. 2013) ("[P]ersonal involvement of [the] defendants in the alleged constitutional deprivations is a prerequisite to an award of damages under § 1983."). Indeed, the complaint contains no specific allegations against Attorney General James at all.

For these reasons, this claim fails notwithstanding the failure to effect proper service, and therefore is dismissed under Rule 12(b)(6).[6]

## C.   Former Corporation Counsel Pestana's Motion to Dismiss

Finally, Ms. Pestana moves to dismiss the Section 1983 claim against her for improper service under Rule 12(b)(5). In the alternative, she moves for dismissal under Rule 12(b)(6) on

---

[6] *See, e.g.*, *AG Worldwide v. Red Cube Mgmt. AG*, No. 01-CV-1228, 2002 WL 417251, at *3 (S.D.N.Y. Mar. 15, 2002) (holding that "it is appropriate to address the merits" although the complaint must be dismissed for improper service because "it is more efficient to resolve the merits as to all respondents now and thus avoid the additional delay of new service").

the grounds that the claim is time-barred and that, in any case, the claim fails because Narayanan does not allege her personal involvement in a deprivation of his constitutional rights. Moreover, the Office of Corporation Counsel of the City of New York, which represents Pestana, argues that to the extent the complaint might be construed as raising a Section 1983 claim against the City, that claim also fails.

     1.   <u>Improper Service</u>

     As discussed above, Rule 4(e)(1) requires service of process in conformity with New York law.  Thus, service may be effected on an individual — among other ways — by mailing the summons via certified mail *and* by personal service.  *See* N.Y. C.P.L.R. § 308(2).  And to the extent that Narayanan intended to sue the City of New York, he was required to effect personal service "to the corporation counsel or to any person designated to receive process."  *Id.* § 311(a)(2).  Narayanan mailed a copy of the summons and complaint via certified mail to the New York City Law Department at 100 Church Street, New York, NY 10007. *See* Pestana Mem. in Supp. of Mot. to Dismiss 9, ECF No. 34.  But he did not personally serve Ms. Pestana or the City, as required.  *See id.*  Accordingly, he has failed to effect proper service on Pestana or the City.  Granting leave to comply with the requirements of service would be futile because Narayanan's Section 1983 claim fails on the merits as to both Pestana and

the City.  *See, e.g.*, *Radiancy*, 138 F. Supp. 3d at 315 (denying leave to effect proper service where the claim fails on the merits); *Maranga*, 903 F. Supp. 2d at 272 (same).

   2.   Section 1983 Claim

   Narayanan mentions Ms. Pestana only with respect to her former role as Corporation Counsel; he makes no specific allegations about her role in violating his constitutional rights or in any other matter.  Absent allegations of Pestana's personal involvement in any alleged misconduct, Narayanan cannot maintain a Section 1983 action against her.  *See Spavone*, 719 F.3d at 135.

   Moreover, to the extent that Narayanan's Section 1983 claim against Pestana is based on the 1998 assault, the claim is (extremely) untimely.  "Section 1983 actions filed in New York are . . . subject to a three-year statute of limitations." *Hogan v. Fischer*, 738 F.3d 509, 517 (2d Cir. 2013).  Narayanan brought this action more than two decades after the three-year statute of limitations expired in 2001, and he has made no argument for tolling the limitations period, let alone established a proper basis for doing so.

   Given Narayanan's *pro se* status, the Court also construes him to raise a Section 1983 claim against the City of New York pursuant to *Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978).  *See, e.g.*, *Ochoa v. Bratton*, No. 16-CV-2852,

2017 WL 5900552, at *1 n.1 (S.D.N.Y. Nov. 28, 2017) (construing *Monell* claim against former NYPD commissioner to be asserted against the City).  That claim also fails.  To establish municipal liability under *Monell*, a plaintiff must "plead and prove three elements: (1) an official policy or custom that (2) cause[d] the plaintiff to be subjected to (3) a denial of a constitutional right."  *Torraco v. Port Auth.*, 615 F.3d 129, 140 (2d Cir. 2010).  Narayanan does not identify any official policy or custom, much less adequately allege that such a policy or custom was a "moving force" in a violation of his constitutional rights, as required.  *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997).

### D.  Narayanan's Motion for Summary Judgment

Because Narayanan's claims against the Federal Defendants, Attorney General James, and Ms. Pestana fail for the reasons discussed above, his motion for summary judgment on the claims against them is denied.  His motion must also be denied with respect to the non-moving defendants — FJC Security, Mr. Giuliani, and Dr. Berman.

Under Federal Rule of Civil Procedure 56(a), a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The moving party has the burden of showing that no genuine issues exist as to any

material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323-
25 (1986).  Narayanan has made no such showing here.  He has
identified no undisputed facts that would support his claims
against any of the defendants.  Indeed, he has failed to comply
with the requirement to file a Local Rule 56.1 statement.  *See
Wali v. One Source Co.*, 678 F. Supp. 2d 170, 178 (S.D.N.Y. 2009)
(*pro se* litigants are "not excused from meeting the requirements
of Local Rule 56.1").  Local Rule 56.1 provides that the
"[f]ailure to submit such a statement may constitute grounds for
denial of the motion."  For these reasons, the motion must be
denied as to all defendants.[7]

### III. Conclusion

The defendants' motions to dismiss are granted
pursuant to Rule 12(b)(6) for failure to state a claim, and
Narayanan's motion for summary judgment is denied.  The claims
against the moving defendants are dismissed with prejudice
because, for the reasons set forth herein, an amended complaint
could not cure the substantive deficiencies of these claims.
*See, e.g.*, *Foman v. Davis*, 371 U.S. 178, 182 (1962) (courts may
deny leave to amend based on the "futility of amendment");

---

[7] To the extent that Narayanan's motion for summary judgment against the
non-appearing defendants (Dr. Berman and Mr. Giuliani) might be construed as
a motion for default judgment, that motion is premature.  *See RSM Prod. Corp.
v. Fridman*, 643 F. Supp. 2d 382, 414 (S.D.N.Y. 2009) ("when a defendant
defaults in an action asserting joint liability, judgment should not be
entered against the defaulting defendant until the matter has been resolved
against the other defendants").

*Wallace v. Conroy*, 945 F. Supp. 628, 639 (S.D.N.Y. 1996)

(dismissing with prejudice where it was "apparent that any

amendment would be futile") (collecting cases).

      The case is respectfully referred to Chief Magistrate

Judge Bloom for pretrial supervision.

      SO ORDERED.

                         /s/ Eric Komitee
                        ERIC KOMITEE
                        United States District Judge

Dated:    September 28, 2023
            Brooklyn, New York